PER CURIAM.
The general election for the office of Police Juror for District IV, Seat “A”, of the Parish of Terrebonne was held on December 13, 1975. Following the election and on December 16, 1975, the Board of Supervisors of Elections of the parish certified Royal J. Pellegrin as the winner over Jacob A. LeCompte by a margin of four votes.
LeCompte filed the instant action on January 30, 1976 against the Board alleging that Pellegrin was improperly certified as the winner because of certain irregularities which took place in four particular precincts with regard to absentee ballots. Pellegrin was not named as a party defendant in the petition.
*174 The Board filed an exception of prescription which places at issue the date on which the election was promulgated as the time limit for contesting the election commences to run from the date said election is “promulgated.”
Exceptions of no right of action, no cause of action, and non-joinder of an indispensable party were also filed by the Board. We pretermit any resolution of these issues as unnecessary because we find that the exception of prescription is valid and plaintiff’s suit should have been dismissed.
R.S. 18:1251, in pertinent part provides:
“A candidate for any parish, district, or municipal office who claims to have been elected to office and who intends to contest the election shall within thirty days after the official promulgation of the result of the election file in the district court for the parish or the district in which the election was held a petition setting forth the facts on which he intends to contest the election.” * * * (Emphasis ours)
Plaintiff contends that official promulgation occurs when the Secretary of State publishes the results and proclaims the winner of each election in the official journal of the state as required by R.S. 18:860. The appropriate portion of this statute reads:
“The secretary of state, or in his default the commissioner of elections, not less than ten nor more than twenty days after the day of holding an election, shall compile the returns transmitted by the board of supervisors of elections of each parish and shall publish in the official journal the names of all candidates voted for and the number of votes cast for each, as shown by the returns. He shall declare the person receiving the greatest number of votes cast for the office for which such persons were candidates to have been duly elected.”

Defendant argues that the thirty day prescriptive period provided in Section 1251 above commences to run from the date the Board performs the functions required of it by R.S. 18:859, to wit:
“H. The board of supervisors of elections of each parish shall, within three days after the closing of the polls, convene at the courthouse of the parish and there, in the presence of at least three voters and as many others as desire to be present, make a true compiled statement as shown by the face of the sworn returns of the commissioners, in triplicate, of the result of the election and shall make public proclamation of the result. The compiled statement shall be sworn to before some other officer competent to administer an oath.”

In the recent case of Etheridge v. Doughty, La.App., 323 So.2d 160 (Nov., 1975), we held that “certification of the result of the election by the Board is tantamount to promulgation thereof.”
In Cooper v. Broussard, La.App., 266 So. 2d 549 (writs denied on other grounds, 263 La. 1, 266 So.2d 710), we held that promulgation occurred when the district political party committee met, tablulated the votes and announced the result of a party primary contest.
In Smith v. Fitch, La.App., 194 So. 435 (1940), involving a contest over an election for a police jury seat and the issue of proclamation, this court stated:
“In order to determine the beginning of the period of delay allowed for bringing a contest for nomination to an office other than that for State and District Offices, it is necessary to refer to other parts of Section 27 of the Act, the pertinent part of which reads as follows: ‘That in all elections * * * where returns are provided by this act to be made to the respective Committees or *175 dering said primary election, it shall be the duty of the said chairman [of the committee], immediately upon receiving the said returns to at once open the same and cause same to he tabulated and compiled, and at twelve o’clock noon on the fourth day after the primary, the said committee ordering same shall reconvene at the same place and the chairman thereof shall submit to it the tabulated statement showing the result of the said primary election, together with the original returns received by him. That after the Committee has met and proclaimed the results as herein provided, * * *.’
(Italicizing ours.)
“From the above provision of the section it would appear that the promulgation of the results of the election referred to in other parts of the section from which the period of delay for filing a contest is to be determined, is similar in effect to the result as proclaimed by a local committee and has the same force and effect as to finality as the official promulgation of the Secretary of State has with reference to nominations for State and District Offices.”
In Brown v. Democratic Parish Committee, 183 La. 967, 165 So. 167 (1935), the Supreme Court of this state held that delays for seeking judicial review of a political party committee’s tabulation of returns commenced to run from the time the committee publicly and officially announced the result of the election. The court stated:
“The word ‘promulgate’ is defined in Funk & Wagnalls Standard Dictionary as follows:
‘“To make known or announce officially and formally to the public.’ (Italics ours.)
“See, also, Webster’s New International Dictionary, Second Edition.
“50 Corpus Juris, p. 720: ‘Promulgate —To publish; to announce officially; to make public as important or obligatory.’ (Italics ours.)”
Section 1251, above, while prescribing that an election contest must be filed within thirty days of the “official promulgation” does not designate or otherwise define what constitutes “official promulgation.” The source of this section consists primarily of Revised Statutes of 1870, Act 24 of 1877 and Act 24 of 1894. As per the Reporters Notes, there was no intention of making any change in the existing law when the Louisiana Revised Statutes were adopted by the Legislature in 1950.
We do not find that Section 1251 has been modified or repealed by the Acts of 1975. Accordingly, “official promulgation”, if possible, must be determined in accordance with other statutes relating to elections, including Sections 859(H) and 860, so as to give to each the effect intended by the Legislature.
R.S. 18:1192 states:
“The official promulgation of the results of all elections wherein voting machines are used or employed shall be in the same manner and form as provided by law in elections where no voting machines are used.”
Under cross reference in West’s Louisiana Statutes Annotated we find reference to Sections 567(C) [1] (pertaining to general elections) and Section 360 (dealing with primary elections). Under Section 567(C) the Board of Supervisors is required to “make public proclamation of the result.” Section 360 provides that the result be “declared and promulgated” in the same manner as must be done in a first primary, which is as provided for in Section 355.
Admittedly, Section 355, while distinguishing between statewide or multidis-trict or multiparish elections on the one *176 hand and local, parochial or single district on the other, does not specifically require the local committee to announce the results of the election after tabulation. It is evident that the Legislature intended such to he done. Otherwise, there would he no public pronouncement of an election result at the local level on purely local offices. Further, our statutes and jurisprudence clearly reflect that there be a distinction between statewide or multiparish or district races and those which are purely local in nature. In the former situations it is the Secretary of State who tabulates the results. In the latter case the local committee compiles and tabulates the result.
Historically, Louisiana’s political wars have been waged in a single party primary and it is, in all probability, for this reason that our research has failed to produce a case (and none has been cited by counsel) where the issue of time of promulgation has presented itself in a general election contest.
Further, our jurisprudence has been consistent in upholding the prescriptive delays in election contests. Brown v. Democratic Parish Committee, above. Reality dictates that all election matters be decided with dispatch. In the primary, ballots must be prepared in time for the general election, hence, the two day requirement (R. S. 18:420), which has actually been construed to mean forty-eight hours, Cooper v. Brown, above. The time sequences for judicial review, including the initial hearing, appeal and rendition of judgment, have been drastically reduced to insure that the election process be permitted to proceed as rapidly as humanly possible.
It is equally imperative that once the election contest has produced an apparent winner in the general election that a candidate’s right to that office be assured. Such is essential to the orderly transition of government.
Now, returning to Sections 860 and 859 (H), above, relied upon by the plaintiff and defendants, respectively, we note that both sections are part of Act 1 of 1975. This act created in Louisiana its first “open election system”, which in essence permits balloting on candidates irrespective of party affiliation. In addition, it eliminated the political party primaries, preparatory to the general election. This act makes no mention of Section 1251 (the thirty days relied upon by the plaintiff). Significantly, we note that Sections 380 through 423 of the Act deal with the “primary election”. Section 420(H) of Act 1 relating to primary elections specifically provides that an election contest must be instituted within two days after the “official promulgation”. With respect to local elections there is no “official promulgation” unless the same is made by the local board of supervisors of elections. Surely, the Legislature did not intend such an absurd result. It is obvious that this requirement for public proclamation was overlooked in the drafting of Section 420 as it relates to primary elections at the local level.
Again, Section 416 of Act 1 (now R.S. 18:416) distinguishes between a statewide election on the one hand (Section 416(A) and a local, parish or district election on the other (Section 416(B).)
Accordingly, we hold that “official promulgation”, within the intent of R.S. 18:1251, occurs in all elections when an appropriate election committee or state officer, who is charged by law to do so, first tabulates and publicly announces the final result of a given election and that the delays for seeking judicial review commence to run from the time of such first public proclamation.
For the above reasons, the judgment of the district court overruling defendant’s plea of prescription is reversed and judgment is rendered herein sustaining the same, dismissing plaintiff’s suit at his costs.
SUIT DISMISSED.

. Same provision is contained in Section 859 (H).