671 So.2d 1267 (1996)
Garrett WALKER, Plaintiff-Appellee,
v.
Dale RINICKER and East Carroll Parish Sheriff's Office, Defendant-Appellant.
No. 28,179-CA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1996.
Writ Denied June 7, 1996.
*1268 Kelly & Kelly by Michael Wayne Kelly, Providence, for Plaintiff-Appellee.
Usry & Weeks by T. Allen Usry and Craig E. Frosch, Metairie, for Defendant-Appellant.
Before NORRIS, WILLIAMS and GASKINS, JJ.
NORRIS, Judge.
The Sheriff of East Carroll Parish, Dale Rinicker, appeals a judgment making peremptory a writ of mandamus directing him officially to promulgate or publish the results of a January 21, 1995 tax election. We affirm.

Factual background
In late 1994 Sheriff Rinicker called, for the third time, an election to renew a five-mill property tax and create another five-mill property tax for law enforcement. The election was held on January 21, 1995. Five days later, the Banner-Democrat, the official journal of East Carroll Parish, ran the following front-page story:

SHERIFF'S TAX PASSES
The third time appeared to be the charm as the sheriff's 10 mill Law Enforcement tax finally received voter approval.
By a vote of 1,165 "yes" versus 936 "no", a difference of 229 votes, the tax passed.

*1269 The victory was marred by allegations that some of the "yes" votes may have been bought and that some of the voters may have been hauled to the polls by paid drivers.
It will be noted by the accompanying chart that if the absentee votes are disregarded, the measure would have failed 660-900. However, when you factor in the 505 "yes" votes from the absentee ballots cast and the 36 "no" votes, the tax passed.
Attached to the story is a precinct-by-precinct and absentee vote tally which everyone concedes is accurate. Sheriff Rinicker concedes, however, that he never published or caused to be published an official notice in the Banner-Democrat announcing these results.
Over four months later, Garrett Walker, a taxpayer, voter and citizen of East Carroll Parish, filed this suit claiming that under the Election Code, R.S. 18:1283 A and 1292, the sheriff was required to promulgate or publish election results, and that Sheriff Rinicker had failed to perform this official promulgation. Contending that the duty of promulgation was nondiscretionary, Walker prayed for writ of mandamus to make the sheriff comply with the law.
A brief hearing was held on July 6, 1995. The facts are essentially undisputed. Sheriff Rinicker testified that he did not recall releasing the election results to the paper for official publication, but that his secretary usually took care of publications. The plaintiff testified that he wanted to contest the election (claiming that the sheriff was "riffing and running hauling people to the polls") but his attorney had advised him that he could not do so until the results were officially promulgated.[1] He therefore brought this suit to cause official publication and thus enable him to contest the results.
The district court found that the applicable statutes, R.S. 18:1283 A and 1292, required strict compliance and mandated that the governing authority "officially publish the results of the election in an appropriate newspaper. The court reasoned that the purpose of promulgation is to give official notice of election results, and a general story in a newspaper is not reliable enough to satisfy the legal requirement. Finding that official results were needed, the court issued mandamus directing Sheriff Rinicker to make an official promulgation.

Applicable law
The formalities for bond, debt and tax elections are set forth in the Election Code, R.S. 18:1283 A:
In every case in which the provisions of the [State Constitution or laws] requires [sic] the approval of voters at an election in a political subdivision as a prerequisite to the * * * levying or increasing of any tax, * * * the election shall be held substantially in accordance with the election laws set forth in Title 18 of the Louisiana Revised Statutes of 1950, except that the election shall be called, conducted, canvassed, promulgated, and notice thereof given by the governing authority of the political subdivision in accordance with the procedures hereinafter set forth. (emphasis added)
The Election Code further regulates the canvass and publication of the results, R.S. 18:1292:
On the date and at the hour and place specified in the notice of election, the governing authority ordering the election, in public session, shall examine and canvass the returns and declare the results of the election. The result shall be promulgated by one publication in a newspaper of general circulation in the political subdivision or, if there is none, in a newspaper of general circulation in the parish[.] (emphasis added)
Promulgation means to make known or to announce officially and formally to the public. Brown v. Democratic Parish Committee, 183 La. 967, 165 So. 167 (1935). In general, the purpose of promulgation is to give notice. Id.; Austin v. Dupre, 328 So.2d 406 (La.App.3d Cir.1976).
*1270 In the Revised Statutes, the word "shall" indicates a mandatory duty. La.R.S. 1:3; C.C.P. art. 5053; State Dept. of Rev. v. Succession of Pope, 22,351 (La.App.2d Cir. 5/8/91), 579 So.2d 1152, writ denied 91-1303 (La. 9/27/91), 585 So.2d 566.
A writ of mandamus is a writ directing, inter alia, a public officer to perform a ministerial duty required by law. La. C.C.P. arts. 3861, 3863. The prescribed duty must be purely ministerial; mandamus will not lie to compel performance of an act which contains any element of discretion, however slight. Felix v. St. Paul Fire & Marine Ins. Co., 477 So.2d 676 (La.1985); Terral Barge Line Inc. v. Madison Parish Port Com'n, 22,251 (La.App.2d Cir. 4/3/91), 577 So.2d 787. Mandamus may issue where the law provides no relief by ordinary means or where the delay involved in pursuing ordinary means may cause injustice. La.C.C.P. art. 3862. The proper function of the writ of mandamus is to compel the doing of a specific thing; it must indicate the precise thing to be done. State v. Mayor and Bd. of Aldermen of the City of Tallulah, 549 So.2d 891 (La.App.2d Cir.1989), writ denied 556 So.2d 39 (1990).

Discussion
On appeal Sheriff Rinicker does not contest that mandamus is the appropriate remedy for failure to perform the ministerial duty of promulgation, but argues that he complied with the applicable statutes. Specifically, he urges that R.S. 18:1292 requires only that the results of the tax election "shall be promulgated by one publication in a newspaper of general circulation in the political subdivision[.]" He contends that this statute does not specify promulgation by advertisement in the legal notice section of the paper, or even that it be made in the official journal of the political subdivision (although the official journal was in fact used here). Other statutes require official publication, such as for the results of local option elections concerning alcoholic beverages, R.S. 26:594, and elections for public utility rate increases, R.S. 45:1164.13. The absence of the more stringent requirement in 18:1292, he contends, shows a legislative purpose not to require formal notice in the legal ads. He therefore argues that the story that appeared in the Banner-Democrat satisfies §§ 1283 and 1292. In fact, he adds, because of its placement above the fold on the front page it probably provided better notice than a legal ad, thus satisfying the "notice" requirement of Brown v. Democratic Parish Committee, supra, and Austin v. Dupre, supra.
The Election Code is clear. Section 1283 A requires the governing authority which calls the election to promulgate the results; section 1292 requires this promulgation to be by publication in a newspaper of general circulation in the political subdivision. As; applied to this case, these sections imposed on Sheriff Rinicker the ministerial duty to announce officially or formally to the public the election results in a newspaper (like the Banner-Democrat) of general circulation in the political subdivision.
We have closely reviewed the evidence. The story, "SHERIFF'S TAX PASSES," does not purport to be an official, formal announcement of election results by the Sheriff. It does not state that the Sheriff caused the publication or provided the returns for publication. It definitely does not include any official certification, seal of approval or imprimatur. The story appears to be the result of normal news-gathering activity. We concede that R.S. 18:1292 does not specify publication by advertisement in the legal notices of the paper. It does, however, mandate that the Sheriff must effectuate the formal, official announcement of the results in the newspaper.
Sheriff Rinicker testified repeatedly that he had no recollection of officially releasing or announcing election results to the Banner-Democrat. He offered that his secretary usually handled publications; admittedly, in criminal and juvenile matters the Sheriff's assistants may act in his stead. La. C.Cr.P. art. 8; Ch.C. art. 109. However, there is no record evidence that she actually did so. This, together with Sheriff Rinicker's total reluctance to say he performed any act tending to cause publication, supports the district court's conclusion that he did not perform the ministerial act of promulgation required by law, and that mandamus would *1271 lie to compel it. This conclusion is not plainly wrong.
We also note that in Brown v. Democratic Parish Committee, supra, there was no statutory provision setting forth the manner of promulgation. For this reason a sharply divided Supreme Court found that the chief deputy sheriff's actual notification of the committee's action to the plaintiffs' attorney sufficed for promulgation.[2] Similarly, in Austin v. Dupre, supra, the court found no applicable law requiring official promulgation of the school board primary election results in an official journal. In that case, a board of elections supervisors meeting was called for the specific purpose (and in compliance with applicable statutes) of announcing the primary results; the court, following Brown, found that such an announcement sufficed for promulgation.[3] These cases are distinguished because of the absence of specific requirements for promulgation affecting those elections; in the instant case, specific statutory requirements are present. In Carnahan v. Police Jury of Calcasieu Parish, 199 La. 262, 5 So.2d 766 (1942), also cited by Sheriff Rinicker, the road district omitted publication of election results in the newspaper published in the district (it was a small rural paper which came out only sporadically), opting instead for publication in the official journal, a larger paper published daily at Lake Charles. The Supreme Court held that the irregular appearance of the local paper made it tantamount to no newspaper published in the district; thus the road district did not violate the statute by using the daily paper from Lake Charles. Significantly, the governing authority caused the results to be published for 30 days, as required by the statute in effect at the time. In the instant case Sheriff Rinicker did not meet the basic mandate of R.S. 18:1283 A and 1292 and thus Carnahan does not justify the claim of substantial compliance.
By his second assignment Sheriff Rinicker urges the district court erred in directing him to "republish" election results 5 ½ months after the election and at a cost of $180.00. Because there was never an official promulgation, we do not perceive that the action directed by mandamus can be a republication. This assignment lacks merit.

Conclusion
For the reasons expressed, the judgment is affirmed. Costs are not assessed. La. R.S. 13:4521 A; see also R.S. 13:5102 B.
AFFIRMED.
NOTES
[1] The action to contest this election must be brought within 60 days of official promulgation of the results. La.R.S. 18:1405 E.
[2] The opinion of the court bears one concurrence, one justice concurring in part and dissenting in part, and two justices dissenting.
[3] Judge (now Justice) Watson dissented from this holding.